# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

VICTOR CARL RUSSELL,

    Appellant,

  v.

DEPARTMENT OF LABOR,

    Agency.

DOCKET NUMBER
SF-0432-24-0132-I-1

DATE:  June 10, 2026

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Victor Carl Russell</u>, Vancouver, Washington, pro se.

<u>David M. Kahn</u>, San Francisco, California, for the agency.

<u>Karina Wegman-Schaaff</u> and <u>David Henry Clark</u>, Seattle, Washington,
 for the agency.

## BEFORE

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which sustained his performance-based removal under 5 U.S.C. chapter 43.  Generally, we grant petitions such as this one only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

The appellant was a GS-12 Wage and Hour Investigator (WHI) for the agency's Wage and Hour Division, employed at its Portland District Office. Initial Appeal File (IAF), Tab 5 at 14. The major duties of a WHI involve investigating suspected violations of Federal wage and hour laws, seeking resolutions with employers, preparing investigative reports, and recommending post-investigative action. IAF, Tab 30 at 224. GS-12 is the highest step on the WHI career ladder. Incumbents are expected to exercise significant independent judgment and work effectively with minimal direct supervision. IAF, Tab 13 at 12, 30-31.

The WHI performance plan includes five "critical results,"[2] and ratings are based on the following five-tier scale: Outstanding, Exceeds Fully Successful, Fully Successful, Minimally Successful, and Unacceptable. IAF, Tab 13 at 11-29, Tab 43 at 156-61. Each critical result includes a number of "standards," which are the specific substantive provisions under which the employee's performance is rated. IAF, Tab 13 at 11. If the employee's

---

[2] A "critical result" is a "critical element" as defined in 5 C.F.R. § 430.203.

performance in any one standard is unacceptable, then his performance is unacceptable in the corresponding critical result. *Id.* at 11. If the employee's performance in any one critical result is unacceptable, then his performance is unacceptable overall. IAF, Tab 43 at 156. Thus, to maintain successful performance, a WHI must maintain at least minimally successful performance under each standard.

Effective September 22, 2022, the appellant's first-level supervisor placed him on a 90-day performance improvement plan (PIP), citing unacceptable performance in critical result 1, standard A (CR1(A)), and critical result 2, standard A (CR2(A)).[3] IAF, Tab 5 at 46-50. To achieve minimally successful performance under CR1(A), at least 87% of the employee's compliance actions must be free of substantive error. IAF, Tab 13 at 13. To achieve minimally successful performance under CR2(A), the employee must complete at least 80% of his compliance actions within 90 days, or within any extensions granted by his supervisor. *Id.* at 16.

After the close of the PIP, the appellant's first-level supervisor, with the concurrence of his second-level supervisor, determined that the appellant's performance remained unacceptable in both CR1(A) and CR2(A). *Id.* at 51-61. On May 11, 2023, the appellant's first-level supervisor proposed his removal based on a charge of unacceptable performance during the PIP. *Id.* at 21-38. After the appellant responded, on October 27, 2023, the deciding official sustained the charge and issued a decision to remove the appellant effective October 30, 2023.[4] *Id.* at 15-20.

---

[3] The PIP was subsequently extended for an additional 23 days to account for leave that the appellant took during the period. IAF, Tab 5 at 62.

[4] The record contains a Standard Form 50 reflecting that the appellant separated by retirement on October 30, 2023. IAF, Tab 5 at 14. The administrative judge found that, by virtue of 5 U.S.C. § 7701(j), the appellant's "October 30, 2024" retirement was immaterial to the jurisdictional issue. IAF, Tab 53, Initial Decision at 27 & n.7. On petition for review, the appellant states that he did not retire on October 30, 2024, but instead submitted his retirement application on October 31, 2023—the day after the

The appellant filed a Board appeal, contesting the merits of the removal and raising affirmative defenses of due process, harmful error, whistleblower retaliation, retaliation for union activity, and discrimination based on age, race, sex, and religion. IAF, Tab 1, Tab 14 at 6-15, Tab 44 at 2-3. After a hearing, the administrative judge issued an initial decision sustaining the appellant's removal. IAF, Tab 53, Initial Decision (ID). He found that the agency proved its case by substantial evidence, ID at 30-79, and the appellant did not prove any of his affirmative defenses, ID at 79-108.

The appellant has filed a petition for review, contesting certain portions of the initial decision, as well as some of the administrative judge's discovery rulings. Petition for Review (PFR) File, Tab 1. The agency has filed a response. PFR File, Tab 3.[5]

## ANALYSIS

To defend an action under 5 U.S.C. chapter 43, the agency must prove by substantial evidence that: (1) OPM approved its performance appraisal system

removal. Petition for Review File, Tab 1 at 15. We acknowledge the typographic error in the initial decision as regards the year. As for the precise date of the retirement and whether the appellant was separated by retirement or by removal, we agree with the administrative judge this is immaterial to the issues before the Board. *See generally Mays v. Department of Transportation*, 27 F.3d 1577, 1578-81 (Fed. Cir. 1994).

[5] After the period for filing a reply brief, but while the appellant's petition for review remained pending with the Board, the appellant filed a motion for leave to submit a supplemental pleading. PFR File, Tab 6. Specifically, the appellant asked for an opportunity to present arguments about *Zepeda v. Nuclear Regulatory Commission*, 2024 MSPB 14, and its discussion of "backwards" performance standards. *Id.*

The legal standards regarding backwards performance standards were previously available to the appellant, even if the *Zepeda* decision was not. *See Zepeda*, 2024 MSPB 14, ¶ 11 (*citing, e.g., Van Prichard v. Department of Defense*, 117 M.S.P.R. 88, ¶ 18 (2011), *aff'd per curiam*, 484 F. App'x 489 (Fed. Cir. 2012); *Henderson v. National Aeronautics and Space Administration*, 116 M.S.P.R. 96, ¶ 12 n.3 (2011)). Therefore, the appellant is essentially seeking an opportunity to advance a new theory that he could have but did not present in a timely manner. For this reason, we deny the appellant's motion. In any event, we find no reason to conclude that the performance standards at issue in this appeal are "backwards" and invalid like those in *Zepeda*.

and any significant changes thereto; (2) the agency communicated to the appellant the performance standards and critical elements of his position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(c)(1); (4) the appellant's performance during the appraisal period was unacceptable in one or more critical elements; (5) the agency warned the appellant of the inadequacies in his performance during the appraisal period and gave him an adequate opportunity to demonstrate acceptable performance; and (6) after an adequate improvement period, the appellant's performance remained unacceptable in at least one critical element. *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 15. In this case, the administrative judge found that the agency proved each of these six elements by substantial evidence. ID at 30-79.

Validity of the Performance Standards

On petition for review, the appellant does not contest the majority of the administrative judge's findings on the elements of the agency's case. He does, however, contest the validity of the performance standards, and he does so on four bases—that the standards were not negotiated, that the standards were not objective, that the standards were overly vague, and that the administrative judge improperly assigned the burden of proof on this issue to the appellant. PFR File, Tab 1 at 4-13.

To prove that performance standards are valid, an agency must show that the standards meet the statutory requirements of 5 U.S.C. § 4302(b)(1) and do not constitute an abuse of discretion. *Van Prichard v. Department of Defense*, 117 M.S.P.R. 88, ¶ 16 (2011), *aff'd per curiam*, 484 F. App'x 489 (Fed. Cir. 2012). Thus, standards must, to the maximum extent feasible, permit the accurate appraisal of performance based on objective criteria. *Greer v. Department of the Army*, 79 M.S.P.R. 477, 483 (1998). Standards must be reasonable, realistic, attainable, and clearly stated in writing. *Walker v. Department of the Treasury*, 28 M.S.P.R. 227, 229 (1985).

On petition for review, the appellant argues that the WHI performance standards are invalid because they were not arrived at through collective bargaining. PFR File, Tab 1 at 4-6. However, we agree with the administrative judge that the appellant's performance standards cannot be invalid on that basis because establishing performance standards is a management right and the content of performance standards is non-negotiable. ID at 31-32; *see* 5 U.S.C. § 7106(a) (listing "management rights" such as issuing discipline and assigning work); *American Federation of Government Employees, Local 32, AFL-CIO and Office of Personnel Management*, 17 F.L.R.A. 326, 327 (1985) (concluding that performance standards were not subject to bargaining because they fell under 5 U.S.C. § 7106(a)(2)(A)-(B)). The appellant argues that the performance appraisal system itself requires that "changes in performance management programs which affect employees in a collective bargaining unit shall be negotiated with the exclusive union representative." PFR File, Tab 1 at 5; IAF, Tab 13 at 41. He further argues that the administrative judge abused his discretion by disallowing testimony about whether the performance standards were actually negotiated. PFR File, Tab 1 at 5-7.

We agree with the administrative judge that a "performance management program" is not the same thing as a "performance management plan." ID at 31-32. The former sets forth a general framework for performance management, while the latter contains the specific performance elements and standards for a given position. IAF, Tab 13 at 39, Tab 53-2, Hearing Audio (HA) at 7:20, 10:00 (testimony of the Branch Chief for Performance Management Operations). Among other things, the performance management program concerns the procedures for establishing the performance standards and critical elements of a performance management plan. IAF, Tab 13 at 39. Although the procedures for establishing standards and elements are negotiable, the standards and elements themselves are not. *American Federation of Government Employees, Local 1923, AFL-CIO and Department of Health and Human*

*Services*, 21 F.L.R.A. 178, 183 (1986); *see* 5 U.S.C. § 7106(a)(2)(A)-(B), (b)(2). Thus, the negotiability of changes to the performance management program does not entail negotiability of changes to specific performance standards and elements. Because the question of whether the performance standards and elements were bargained for is immaterial to their validity, we find that the administrative judge did not abuse his discretion in excluding testimony on the matter. *See Parker v. Department of Veterans Affairs*, 122 M.S.P.R. 353, ¶ 21 (2015) (holding that an administrative judge has wide discretion to control the proceedings, including the authority to exclude testimony that she believes would be irrelevant, immaterial, or unduly repetitious).

Regarding objectivity, the administrative judge acknowledged that there were subjective components to some of the appellant's performance standards. ID at 41. However, he found that, for a professional position like WHI, which "involves the type of professional judgment which is not susceptible to a mechanical rating system," performance standards that "call for a certain amount of subjective judgment on the part of the employee's supervisor" are not automatically invalid. ID at 42-43 (*quoting Neal v. Defense Logistics Agency*, 72 M.S.P.R. 158, 162 (1996)). He concluded that CR1(A) and CR2(A) were both sufficiently objective. ID at 43.

On review, the appellant argues that the performance standards were not objective because there was no objective tool used to rate his performance. PFR File, Tab 1 at 9-10. He reasons that the agency relies entirely on a supervisor's experience to determine how complex a case is and how long it should take to complete. *Id.* at 9-10, 15. However, for the reasons explained in the initial decision, we agree with the administrative judge that the CR1(A) and CR2(A) were sufficiently objective. Complex professional work like the appellant's "may be rated only with a certain modicum of subjective judgment." *Wilson v. Department of Health and Human Services*, 770 F.2d 1048, 1055 (Fed. Cir. 1985). In such cases, a degree of subjectivity in performance

assessment may be unavoidable, but based on our review of the performance standards at issue here, they seem about as objective as they could be considering the type of performance being rated. CR1(A) and CR2(A) set forth precise percentages for allowance of substantive error and untimeliness respectively, and they even provide detailed, objective guidance for the supervisor to use in determining whether a substantive error was committed and whether a deadline extension should be granted. IAF, Tab 13 at 13, 16. As for whether the agency might be able to develop some sort of "tool" that would remove all subjectivity from the rating process, even if this were possible, it still would not render the current performance standards invalid. "Congress did not mandate the most exact standard conceivable but left discretion to the agency so long as it created an 'objective' . . . standard 'to the maximum extent *feasible*.'" *Wilson*, 770 F.2d at 1056 n.6 (quoting 5 U.S.C. § 4302(b)(1) (1984) with emphasis added, since relocated to 5 U.S.C. § 4302(c)(1)).

The appellant further argues that the performance standards are invalid because they are based on a WHI's processing of "cases." PFR File, Tab 1 at 8, 11. He argues, "It is self-evident that criteria written which gives every single unit of work the exact same weight (a value of one), regardless of how many hours or years of work would be required to complete such unit of work is, on its face, impermissibly subjective as written." *Id.* at 8. The administrative judge thoroughly addressed this argument, finding that the appellant was not genuinely confused about what constituted a "case" but was instead advocating for a different way of counting cases, which did not render the performance standards invalid. ID at 36-39. We agree with the administrative judge, adding that the appellant's disagreement with the agency's method of defining cases does not mean that the definition was subjective. Further, we cannot agree with the appellant that all cases are treated the same under the WHI performance management plan. Like most investigators, a WHI will handle cases of varying complexity and time requirements. CR2(A) accounts for this by acknowledging

that some cases "might require a lengthier period of time" to complete and allowing for extensions. IAF, Tab 13 at 16.

The appellant argues that the administrative judge abused his discretion by disallowing expert testimony about the objectivity of the performance standards. PFR File, Tab 1 at 5-9, 12. As an initial matter, the administrative judge specifically notified the parties of their right to object to his rulings on witnesses and of the deadline for doing so, but the appellant did not raise any objection. IAF, Tab 44 at 9. A party's failure to raise a timely objection to a ruling on witnesses below generally precludes his doing so on review. *Storm v. Department of the Army*, 64 M.S.P.R. 14, 21 (1994). In any event, the appellant has not summarized the proffered testimonies of the witnesses, and he has not shown that their testimonies would be material to the issues raised in the appeal. *See Butler v. Department of the Air Force*, 73 M.S.P.R. 313, 317 (1997) (finding that an appellant failed to show an administrative judge erred in denying witnesses when the appellant did not summarize the proffered testimony of the witnesses or show that their testimony would be relevant to the issues raised in the appeal and would be nonrepetitive). We agree with the administrative judge that the various approved fact witnesses were sufficient to establish what the performance standards entail and that expert testimony would not assist the Board in determining whether the standards are sufficiently objective as a matter of law. IAF, Tab 18 at 8, Tab 44 at 5 n.3. Any testimony from witnesses who believed that they could have devised a more objective standard would be immaterial. *See Wilson*, 770 F.2d at 1056 n.6.

The appellant also argues that the administrative judge never required the agency to provide any evidence of objectivity and impermissibly shifted the burden to the appellant to prove what degree of objectivity would be feasible. PFR File, Tab 1 at 7-8, 11-13. We have considered these arguments, but we disagree. Regarding evidence of objectivity, we find that the WHI performance standards speak for themselves. Apart from the various fact witnesses, including

the appellant, who testified about what the standards entail, nothing further was required for the agency evidence to prove that the performance standards were objective. Nor do we find that the administrative judge placed the burden on the appellant to disprove this element of the agency's case. In determining whether the agency proved its case by substantial evidence, the administrative judge was bound to consider the whole record, including the evidence and argument proffered by the appellant. *See Adamsen v. Department of Agriculture*, 116 M.S.P.R. 331, ¶ 7 n.3 (2011). In so doing, the administrative judge did not shift the burden of proof to the appellant. ID at 42 n.14.

The appellant does not contest the administrative judge's analysis of the remaining elements of the agency's case. *See* 5 C.F.R. § 1201.115 ("The Board normally will consider only issues raised in a timely filed petition for review."). For the reasons explained in his thorough and well-reasoned initial decision, we agree with the administrative judge that the agency proved its case by substantial evidence. ID at 30-79.

Sex Discrimination

Even if the agency proves its case, the action still may not be sustained if the appellant proves by preponderant evidence that it was based on a prohibited personnel practice under 5 U.S.C. § 2302(b). 5 U.S.C. § 7701(c)(2)(B); 5 C.F.R. § 1201.56(b)(2)(i)(C). Among other things, the appellant in this case raised an affirmative defense of discrimination based on sex. IAF, Tab 14 at 11. To prove an affirmative defense of sex discrimination, the appellant must show that sex discrimination was at least a motivating factor in the agency's action, i.e., that sex discrimination played any part in the way the decision was made. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 20-21.

As pertinent to this issue, the record contains the following evidence. The Portland District Office is headed by a District Director and, under her, two Assistant District Directors. One of the Assistant District Directors was the appellant's first-level supervisor, and the District Director was his second-level

supervisor. IAF, Tab 52-1, HA at 6:30 (testimony of the appellant's second-level supervisor). During the relevant time period, all three of these individuals were women, and no man had been appointed as an Assistant District Director in Portland since about 2010. IAF, Tab 51-4, HA at 4:20, 2:47:25 (testimony of the appellant). On July 21, 2022, the appellant's second-level supervisor sent an email to both Portland Assistant District Directors with the subject line "Check out this female power from the Portland [District Office agricultural enforcement] planning session." IAF, Tab 32 at 355. The email contained a screenshot of a videoconference meeting between eight women and two men. *Id.* On July 15, 2022, the appellant's second-level supervisor sent an email to the Houston District Director, with a copy to the appellant's first-level supervisor, with the following statement:

> You were one of the instructors in my New Supervisor class . . . . I remember you talking about the all-female leadership team you had cultivated in your [District Office]. I'm pleased to say that Portland [District Office] is doing better than ever and I believe it is thanks to the culture created by the all-female leadership team here.

*Id.* at 356.[6]

The administrative judge considered this evidence but found it insufficient to show that sex discrimination was a motivating factor in the appellant's removal. ID at 88-92. Among other things, he found that the general fact that the agency is elevating women to leadership positions in a "historically male-dominated domain[]" is not evidence of sex discrimination. ID at 89. On review, the appellant argues that there is no evidence to show that the Wage and Hour Division was a "historically male-dominated domain." PFR File, Tab 1 at 10, 13. We disagree; the appellant's second-level supervisor provided

---

[6] The record also shows that the last time that a man was promoted to Assistant District Director in Houston was before 2010, with between three and five women having been promoted to Assistant District Director in Houston since that time. IAF, Tab 53, HA at 51:20 (testimony of J.D.). However, we agree with the administrative judge that the appellant has not shown the relevancy between his removal in Portland and the make-up of the management staffing in Houston. ID at 92.

uncontroverted testimony that "Wage and Hour ha[d], in [her] experience been very male dominated, and the agricultural industry is absolutely male dominated." IAF, Tab 52-1, HA at 56:35 (testimony of the appellant's second-level supervisor). But whatever the case, we agree with the appellant that no historical sex imbalance in the Wage and Hour Division would justify the agency considering his sex in the removal action. PFR File, Tab 1 at 10, 13.

Part of the appellant's theory of sex discrimination is that the Houston District Director passed an anti-male bias along to his first-level supervisor while training her for the Associate District Director position. PFR File, Tab 1 at 11. However, even assuming that the Houston District Director harbored some sort of anti-male bias,[7] this would not warrant a finding that the appellant's first-level supervisor was somehow tainted by association. There is no evidence to suggest that the appellant's first-level supervisor herself harbored any such bias or that the Houston District Director said anything during training to encourage such bias.

In his initial decision, the administrative judge noted that, after the appellant's removal, his first-level supervisor was promoted to District Director, and she in turn promoted a male employee to backfill the Associate District Director position left vacant by her promotion. ID at 92 n.1. The appellant argues that it was inappropriate for the administrative judge to consider events that occurred after his removal. PFR File, Tab 1 at 10, 14-15. Because the evidence about more women being promoted in Portland than men during this time period is not particularly probative of the issue at hand, we decline to reach the question of whether the administrative judge's consideration of this evidence was in error. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (finding that an adjudicatory error that is not prejudicial to a party's

---

[7] The Houston District Director did not testify at the hearing, and any suggestion of sex discrimination on her part consists only of vanishingly weak circumstantial evidence and unsworn double hearsay. IAF, Tab 32 at 356.

substantive rights provides no basis to reverse an initial decision). The sample size of what appears to be four promotion actions (if one excludes the fifth promotion, which went to a man), is too small to be statistically significant. *See Bongiorno v. Defense Logistics Agency*, EEOC Appeal No. 01883721, 1989 WL 1004367 at \*5 (1989), *request for reconsideration denied*, EEOC Request No. 05890610 (Nov. 17, 1989) (observing that "statistical evidence . . . d[id] not demonstrate pretext in a disparate treatment discrimination case" and, in any event, a sample size of 15 high-level positions occupied by men was too small to evidence disparate treatment based on sex).

Of greater probative value are the statements made by the appellant's second-level supervisor, viz. her emails, sent only to other women at the agency, acclaiming "female power," praising the Houston District Director's cultivation of an all-female leadership team, and attributing Portland's success to "the culture created by the all-female leadership team" there. IAF, Tab 32 at 355-56. The administrative judge considered these emails and found that the most concerning statement was about how the Houston District Director "cultivated" an all-female leadership team. ID at 91. However, he found that "'[c]ultivate' could be read in a less concerning sense and may have been simply a poor word choice." ID at 91-92. On petition for review, the appellant disputes the administrative judge's analysis, arguing that he should have inferred a culture of sex discrimination in the Wage and Hour Division. PFR File, Tab 1 at 13-14.

We agree with the administrative judge that there are different ways that the second-level supervisor's emails could be taken, but we agree with the appellant that the most natural reading is that the second-level supervisor believed that Wage and Hour Division district offices are better off being run by women. Stepping back from the word "cultivate," the emails as a whole belie a preoccupation with the sex of management employees and suggest that the atmosphere of an office may be improved by installing all-female leadership.

When questioned about these emails at the hearing, the second-level supervisor denied any discriminatory hiring practices but stated that the leadership team in Portland had created "a culture of accountability, but also caring and community within the office," and "an environment that people wanted to work and felt safe." IAF, Tab 52-1, HA at 55:55, 1:01:50 (testimony of the appellant's second-level supervisor). This testimony does not detract from the implication in her emails that a positive work environment is best achieved by excluding men from management positions. Though not a pure apples to apples comparison, our point is illustrated by imagining if these statements had touted male power or an all-male leadership team, rather than female power and an all-female leadership team. Whether touting men or women, these types of statements are not ones that we condone.

Nevertheless, we agree with the administrative judge that the issue of discriminatory promotion practices bears only a tenuous link to the issues in this appeal for two reasons. First, this appeal is not about a promotion decision; it is about the appellant's removal for performance reasons. ID at 91-92. Second, the appellant's second-level supervisor played only a minor role in this employment action when she concurred with the first-level supervisor's assessment of the appellant's PIP performance. ID at 92; IAF, Tab 5 at 51. The primary actors were the appellant's first-level supervisor, who instituted the PIP and proposed the removal, and the Regional Administrator, who sustained the proposed removal. IAF, Tab 5 at 15, 21, 46. There is nothing in the record to suggest that either of these officials were motivated by sex discrimination. Although the second-level supervisor's comments constitute competent circumstantial evidence of discrimination, *see Pridgen*, 2022 MSPB 31, ¶ 24 (discussing the types of evidence that might be relevant to a Title VII discrimination claim, such as ambiguous statements from which discriminatory intent can be inferred), "[r]emarks at work that are based on sex stereotypes do not inevitably prove that gender played a part in a particular employment decision," *Price Waterhouse v.*

*Hopkins*, 490 U.S. 228, 251 (1989). "[S]tray remarks indicating bias by a supervisor, without more, are insufficient to demonstrate discriminatory animus under Title VII." *Varnado v. Department of Justice*, EEOC Appeal No. 01976326, 1999 WL 708898 at *2 (Aug. 26, 1999), *recons. denied*, EEO Request No. Request No. 05A00071, 2000 WL 270508 (Mar. 2, 2000). We agree with the administrative judge that, considering the record as a whole, the evidence does not show that sex was a motivating factor in the appellant's removal. ID at 92.

The appellant does not contest the administrative judge's findings on the remainder of his affirmative defenses. *See* 5 C.F.R. § 1201.115. We have reviewed the administrative judge's analysis of these claims, and we find no basis to disturb them. The administrative judge used the correct analytical framework for each affirmative defense, and his findings are supported by the evidence of record. ID at 80-85, 92-108.

Discovery

On November 29, 2023, the administrative judge issued a detailed discovery order, apprising the parties of the procedures and methods for conducting discovery and notifying them that discovery would close on January 25, 2024, barring any extensions. IAF, Tab 3. On January 29, 2024, the appellant filed a motion for an extension of time to conduct discovery and to file a motion to compel if needed. IAF, Tab 19. The administrative judge denied the motion as to written discovery, but he granted an extension until February 1, 2024, as to one outstanding deposition. IAF, Tab 21. On January 31, 2024, the appellant filed a motion seeking to compel the deposition of the Wage and Hour Division Associate Administrator. IAF, Tab 23. The administrative judge denied the motion. IAF, Tab 29.

On petition for review, the appellant argues that the administrative judge should have granted him an extension of time to seek written discovery because the agency's discovery responses were deficient. PFR File, Tab 1 at 15-16. However, in his November 29, 2023 discovery order, the administrative judge

clearly explained that discovery would close on January 25, 2024, and that all discovery motions must be filed by that date. IAF, Tab 3 at 3. Furthermore, he repeatedly reminded the appellant of the deadline as it approached. IAF, Tab 10 at 2, Tab 18 at 9. Under the circumstances, we agree with the administrative judge that the appellant did not show good cause to extend the discovery period. IAF, Tab 21 at 2; *see* 5 C.F.R. § 1201.55(c).

The appellant also argues that the administrative judge abused his discretion in denying his motion to compel the deposition of the Wage and Hour Division Associate Administrator, arguing that the administrative judge's ruling impaired his ability to present his case.[8] PFR File, Tab 1 at 16. An administrative judge may limit discovery when he finds that the information sought is cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive. 5 C.F.R. § 1201.72(d)(1). Here, we agree with the administrative judge that this high-level agency official was unlikely to have information that would both be relevant to the appellant's case and outside the knowledge of the six other agency managers whom the appellant had already deposed. IAF, Tab 29. Because this deposition would have been burdensome to the agency, and any information gathered would likely have been either cumulative or irrelevant, we find that the administrative judge did not abuse his discretion in denying the motion to compel.

Bias

An administrative judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a); *Baker v. Social Security Administration*, 2022 MSPB 27, ¶ 7. In this case, the administrative judge notified the parties that he had been employed by the agency until 2020. IAF, Tab 10 at 2. He provided the following additional details:

---

[8] The petition for review includes several pages of text from a motion for clarification that the appellant filed below. PFR File, Tab 1 at 16-22; IAF, Tab 17. We have considered this information as background.

> I worked in the Office of Administrative Law Judges. I did not work in the Solicitor of Labor's office or interact with the Wage and Hour Division in any capacity. Based on my review of the file, I did not work with anyone involved in this appeal and recognized only one name.

*Id.* On petition for review, the appellant argues that the administrative judge should have, but did not, advise him of his right to file a motion for recusal. PFR File, Tab 1 at 22.

Assuming, without finding, that the administrative judge should have notified the appellant of his right to request recusal, we find that there would be insufficient basis to grant such a request.[9] The administrative judge's previous employment in a different division of this large agency, and his recognition of a single name in the case file, does not provide a reasonable basis to question his impartiality. *See Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶¶ 18-22 (2010) (finding no reasonable basis to question the administrative judge's impartiality from the fact that she and agency counsel had previously been coworkers at a different agency). There is no indication of a continuing or even former relationship between the administrative judge and any individual involved in the appellant's removal or in this appeal.

## NOTICE OF APPEAL RIGHTS[10]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a

---

[9] Even on review, the appellant is not explicitly requesting a new proceeding before a different administrative judge.

[10] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2)** **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3)** <u>**Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**</u>.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[11]  The court of appeals must <u>receive</u> your

---

[11] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD:                    _____

Gina K. Grippando
Clerk of the Board

Washington, D.C.